United States District Court
for the
Southern District of Florida

| Ford Motor Co., Plaintiff, | ) | |
|---|---|---|
| v. | ) | Civil Action No. 15-23638-Civ-Scola |
| Heralpin USA, Inc. and Jose Rafael Betancourt, Defendants. | ) ) | |

### Order on Defendants' Motion for Final Summary Judgment

The Plaintiff, Ford Motor Company, filed an amended complaint alleging ten counts: Breach of contract (Count 1) against the Defendant Heralpin USA, Inc.; negligent misrepresentation (Counts 2 and 6), fraudulent misrepresentation (Counts 3 and 7), violation of Florida Deceptive and Unfair Trade Practices Act (Counts 4 and 8), unjust enrichment (Counts 5 and 9) against Heralpin and Betancourt; and an action to pierce the corporate veil against the Defendant Jose Rafael Betancourt (Count 10). (Am. Compl., ECF No. 45.) In response, Heralpin raised thirty-three affirmative defenses, while Betancourt did not raise any affirmative defenses. (Answer, ECF No. 46.)

The Defendants ask the Court to grant summary judgment in their favor on all of Ford's claims. (Mot. Summ. J., ECF No. 74.) Having reviewed the record, the parties' briefs, the relevant legal authorities, and for the reasons more fully explained below, the Court **denies** the Defendants' motion for summary judgment.

1. **Court's Initial Comments**

As an initial matter, the Court notes that the Defendants' motion is rife with typographical and grammatical errors, and replete with nonsensical arguments and irrelevant information. The motion and the reply (ECF No. 84) also exceed the applicable page limitation as set by the Local Rules, and the Defendants did not request leave to file pages in excess. *See* S.D. Fla. L.R. 7.1(c)(2) ("Absent prior permission of the Court, neither a motion and its incorporated memorandum of law . . . shall exceed twenty (20) pages; a reply memorandum shall not exceed ten (10) pages."). Moreover, the Defendants' motion is nearly unintelligible, and urges the Court to reach conclusions that are patently unsupported by the facts or law applicable to this case.[1] In

---

[1] For example, the Defendants cite to paragraph 16 of their SOF to support the contention in their motion that "Alfredo Basanta stated that he himself delivered many [of the vehicles] to the port for export." (Mot. at 14 n.24; ECF No. 74.) However, paragraph 16 of the SOF states that "Heralpin's purchase [o]rder was for export

addition, many of the findings urged by the Defendants turn on determinations of credibility, which are not proper upon a motion for summary judgment. As such, the Court fails to understand how the Defendants' counsel, in the candor required under the Federal Rules of Civil Procedure, has moved for summary judgment under the circumstances in this case.

## 2. Background

Ford manufactures motor vehicles bearing the Ford and Lincoln brand names. (Am. Compl. ¶ 10, ECF No. 45.) To encourage high-volume purchases of Ford vehicles from dealers, Ford offers various incentive programs to qualified businesses and individuals. (*Id.* ¶ 11.) One such program is Ford's Government Price Concession Program ("GPC Program"), at issue in this lawsuit. (*Id.* ¶ 12.) Through this program, Ford provides discounts or credits to qualified purchasers and lessees, specifically for use by state and local government agencies. (*Id.*) To gain access to the GPC Program, putative participants must agree to Ford's Fleet Eligibility Requirements and execute a Fleet Identification Number ("FIN") Agreement. (*Id.* ¶ 14.) Consistent with the requirements and FIN Agreement, purchasers and lessees must agree that the vehicles will be "used by state and local government agencies," operated and registered only in the United States, and cannot be exported. (*Id.* ¶¶ 12, 14, 15.)

Ford alleges in its amended complaint that Heralpin, through its principal Betancourt, obtained a FIN. (*Id.* ¶ 14.) According to Ford, it provided 270 vehicles to Heralpin between 2007 and 2014 to be used consistent with the GPC Program and corresponding FIN Agreement. (*Id.* at ¶ 16.) Ford further alleges that Heralpin exported the Ford vehicles immediately upon purchase in violation of the GPC Program, corresponding FIN Agreement, and other relevant requirements. (*Id.* at ¶ 19.) As a result, Ford filed a ten count complaint against Heralpin and Betancourt. (Am. Compl., ECF No. 45.) Notwithstanding Ford's allegations, the Defendants claim that they have never entered into a contract with Ford—in fact, according to Defendants they have never had any direct dealings or communication with Ford. (Mot. Summ. J. ¶¶ 2–11.)

On April 21, 2016, Ford served several discovery requests on Heralpin, including its first request for admission. (Pl.'s Exs. in Opp'n to Defs.' Mot. Summ. J. (hereinafter "Resp. Exs") Ex. A, ECF No. 76-1.) These requests for admission included the following:

---

vehicles only," and cites to an exhibit filed under seal. (Defs.' SOF ¶ 14; ECF No. 74-1.) The exhibit in turn contains no statement made by Alfredo Basanta.

> 4. Admit that Heralpin entered into a contract with Ford Motor Company providing discounted vehicle pricing for vehicles sold or leased to state and/or local governmental agencies.
> . . . .
> 14. Admit that Heralpin entered into a Fleet Identification Number Agreement with Ford.
> . . . .
> 16. Admit that the Fleet Identification Number Agreement contained eligibility requirements.
> . . . .
> 19. Admit that the Fleet Identification Number Agreement eligibility requirements stated that Heralpin must certify that vehicles are to be used by state and local government agencies must remain in-service in the state or local use for a period of 12 months or 25,000 miles.
> 20. Admit that pursuant to the Fleet Identification Number Agreement, Heralpin agreed that, to be eligible for any discounts, the purchased vehicles must be operated and registered only in the United States, and could not be exported.
> . . . .
> 24. Admit that Heralpin exported vehicles it purchased from franchised Ford dealerships to Venezuela.

(*Id.* at 2-4.) Heralpin never responded to Ford's request for admission.

After Ford filed its response in opposition to the Defendants' motion for summary judgment the Defendants filed a "motion to amended [sic] answers to admissions," seeking to "withdraw[] or amend[] Plaintiff [sic] first request to admission answers [sic]." (Mot. at 1, ECF No. 83.) The Magistrate Judge entered an order denying the Defendants' request on April 28, 2017 (ECF No. 91), and no party contested or otherwise appealed that order.

Further, the Defendants' answers to interrogatories have changed throughout this litigation. Initially, the Defendants acknowledged that a contract existed between Ford and the Defendants and that the Defendants accessed pricing available with the use of their FIN . (Resp. Exs. Ex. B at 6–7, ECF No. 76-2.) However, the Defendants subsequently asserted that no contract ever existed with Ford. (Resp. Exs. Ex. C at 3, ECF No. 76-3.)

Moreover, virtually every material fact contained within the Defendants' statement of uncontroverted facts (Defs.' Statement of Facts ("SOF"), ECF No. 74-1) is disputed. Significantly, the Defendants state that they never contacted Ford to obtain any discounts and deny that they obtained any benefits as a result, yet Ford points to ample evidence in the record that the Defendants

used the FIN they requested to obtain more favorable pricing on vehicles that they do not deny purchasing. (Pl.'s Statement of Facts, ECF No. 81.)

   3. **Legal Standard**

"Summary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, caution must be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment." *Tippens v. Celotex Corp.*, 805 F.2d 949, 952–53 (11th Cir. 1986); *see also Brunswick Corp. v. Vineberg,* 370 F.2d 605, 612 (5th Cir. 1967)[2] ("[C]ourts must be mindful of [the] aims and targets [of summary judgment] and beware of overkill in its use."). Thus, summary judgment is only proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (internal citation omitted). "A material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal citation and quotations omitted).

The moving party bears the burden of proof to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990); *see also Tippens*, 805 F.2d at 952 ("The District Court . . . can only grant summary judgment if *everything* in the record demonstrates that no genuine issue of material fact exists.") (internal citation, quotations, and ellipses omitted).

In particular, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.

---

[2] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict.") (quoting *Anderson*, 477 U.S. at 255); *Gary v. Modena*, 2006 WL 3741364, at *16 (11th Cir. Dec. 21, 2006) (Fed. R. Civ. P. 56 precludes summary judgment where court would be required to reconcile conflicting testimony or assess witness credibility); *Ramirez v. Nicholas*, 2013 WL 5596114, at *4 (S.D. Fla. Oct.11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so.").

Finally, where the moving party has asserted affirmative defenses, it bears the burden of proof to show that no genuine issue of material fact exists with respect to the affirmative defenses. *Singleton v. Dep't of Corr.*, 277 F. App'x 921, 923 (11th Cir. 2008); *see also Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 591 (11th Cir. 1994) ("Thus, by moving for summary judgment . . ., defendants thrust before the court for scrutiny not only the merits of plaintiff's evidence, but the strength of their own defense and must establish that there is an absence of any issue for jury resolution.").

Bearing these standards in mind, the Court considers the instant motion.

### 4. Legal Analysis

#### A. Heralpin's admissions create issues of fact precluding entry of summary judgment on Counts 1 through 4 against Heralpin and Counts 6 through 8 against Betancourt

The Defendants assert that they are entitled to summary judgment as a matter of law because a contract was never formed between them and Ford, they never had any dealings with Ford, and they have never communicated with Ford. However, as previously noted, the Defendants' own contentions on these points are inconsistent. As a result, the Defendants fail to carry their burden to establish that they are entitled to summary judgment upon these claims.

#### B. Counts 5 and 9: unjust enrichment

The Defendants contend that they are entitled to summary judgment upon Ford's unjust enrichment claims because they obtained no benefit from Ford, and they never knowingly or voluntarily accepted anything of value from Ford. (Mot. at 21, 26; ECF No. 74.) Once again, however, the Defendants do not

deny that they obtained a FIN, or that they used the FIN when purchasing vehicles from Ford. Thus, the Defendants' assertion that they did not obtain a benefit, or knowingly and voluntarily accepted anything of value from Ford is unsupported by the record. The Defendants are therefore not entitled to summary judgment upon Ford's unjust enrichment claims.

### C. Count 10: Pierce the Corporate Veil

The Defendant Betancourt claims that he is entitled to summary judgment upon Ford's claim for piercing of the corporate veil because he possessed no improper purpose. (Mot. at 27; ECF No. 74.) In response, Ford provides citations to the Defendant's own deposition, in which he admits that he is the only officer of the Defendant Heralpin, there is no board of directors for Heralpin, and that he makes all the decisions concerning Heralpin. (ECF No. 76-19 at 2, 12.) He also admitted that Heralpin pays a high percentage, which he estimates to be 70%, of his personal expenses. (*Id.* at 13.) In addition, no one kept records for Heralpin, and Betancourt's daughter served in the position of "[h]er dad's assistant." (ECF No. 76-21 at 3.) There is also ample evidence in the record that Betancourt used Heralpin's funds interchangeably with his own. (ECF Nos. 76-24 – 76-29.)

As such, making the inference that Betancourt lacked an improper purpose such that this Court should grant summary judgment upon Ford's claim is unsupported by the record. Therefore, he is not entitled to summary judgment on Count 10.

### D. Affirmative Defenses

The Defendants also appear to contend that they are entitled to summary judgment upon several of their affirmative defenses, but again, their contentions are belied by the factual inconsistencies already highlighted, or are otherwise unsupported by the record. Therefore, the Defendants have failed to meet their burden to establish that there is no genuine issue of material fact in this regard.

## 5. Conclusion

Accordingly, the Court **denies** the Defendants' motion for summary judgment (**ECF No. 74**).

**Done and ordered** at Miami, Florida, on October 23, 2017.

_____
Robert N. Scola, Jr.
United States District Judge